UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X   Civil Case No.:
MURAT MARTINOVIC,

        Plaintiff,

    -Against-   **COMPLAINT**

THE EXPANSION GROUP INC., JOSEPH MELOHN,
RYAN MELOHN, and JASMIN VEGA,   **JURY TRIAL DEMANDED**

        Defendants.
---------------------------------------------------------------------X

Plaintiff Murat Martinovic (hereinafter "Plaintiff" or "Mr. Martinovic") alleges against Defendants The Expansion Group, Inc. ("Expansion"), Joseph Melohn ("Joseph"), Ryan Melohn ("Ryan"), and Jasmin Vega ("Vega") upon information and belief, as follows:

1. Plaintiff was employed by the Defendants at the building located at 83-43 118th Street and 83-57 118th Street, Kew Gardens, New York location.

2. Plaintiff complains pursuant to the Family Medical Leave Act, ("FMLA") 29 U.S.C. Chapter 28 seeking damages to redress the injuries Plaintiff suffered as a result of unlawful employer practices and retaliation on the basis of his exercising family leave; pursuant to New York State Human Rights Law (NYSHRL) N.Y. Exec. §§ 290 to 301 seeking damages to redress the injuries he has suffered as a result of discrimination and retaliation by his former employer on the basis of his national origin and religion; and pursuant to New York City Human Rights Law (NYCHRL) (N.Y.C. Admin. Code § 8-101 to 8-703) seeking damages to redress the injuries suffered as a result of discrimination

and retaliation by his former employer on the basis of his national origin, religion, and caregiver status.

3. Plaintiff also brings this action to recover unpaid wages, spread-of-hours premiums, and for failure to provide proper wage notices and wage statements, pursuant to New York Labor Law §§ 190 *et seq*.

4. Plaintiff alleges that during the statutory period under New York Labor Law, Defendants willfully violated the NYLL by (i) failing to pay overtime premium pay; (ii) failing to provide the Notice of Acknowledgement of Payrate and Payday under N.Y. Lab. Law §195.1, and (iii) failing to provide an accurate wage statement under N.Y. Lab. Law §195.3.

5. Plaintiff alleges pursuant to the NYLL that he is entitled to recover from Defendants: (1) unpaid overtime (2) penalties for wage notice violations; (3) liquidated damages; (4) interest and; (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions. The Court has supplemental jurisdiction over the New York State and New City Causes of Actions as the facts supporting these causes of action also arise from the same nucleus of events forming the basis for the federal causes of action.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is appropriate under 28 U.S.C. § 1391 (b) and (c), as Defendants maintains a corporate headquarters in New York County, regularly conduct business in this District, and is subject to personal jurisdiction in this district.

## PARTIES

9. Plaintiff was and still is a resident of the County of Queens, State of New York.

10. Defendant Expansion is a for-profit business duly organized to conduct business in the State of New York, County of New York.

11. Defendant Expansion maintains and operates its business located at 250 West 57th Street New York, New York 10107.

12. That at all times hereinafter mentioned, Defendant Ryan was and is an executive officer of Defendant Expansion

13. That at all times relevant, Defendant Ryan served in a supervisory role at Defendant Expansion.

14. That upon information and belief, Defendant Ryan was and is a resident of the State of New York.

15. That at all times hereinafter mentioned, Defendant Joseph was and is an executive of Defendant Expansion.

16. That at all times relevant, Defendant Joseph served in a supervisory role at Defendant Expansion.

17. That upon information and belief, Defendant Joseph was and is a resident of the State of New York.

18. Defendants Joseph and Ryan exercised control over the employment terms and conditions of Plaintiff and exercised the power and authority to (i) fire and hire, (ii) determine the

rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff.

19. At all times, Plaintiff could complain to Defendants Joseph and Ryan directly regarding any of the terms of his employment, and Defendants Joseph and Ryan would have the authority to effect any changes to the quality and terms of Plaintiff's employment.

20. Defendants Joseph and Ryan exercised functional control over the business and financial operations of employees, including payments of wages, cash wages, recording hours, tax withholdings, wage notices, and adhering to Federal and State regulations for employment practices and compensation.

21. At all relevant times, Joseph is an "employer" and is an "enterprise engaged in commerce" within the meaning of the NYLL and the Regulations thereunder.

22. At all relevant times, Ryan is an "employer" and is an "enterprise engaged in commerce" within the meaning of the NYLL and the Regulations thereunder.

23. At all relevant times, Defendants Joseph and Ryan own, operate and controls Defendant Expansion's day-to-day operations and management and jointly employed Plaintiff.

24. Each Defendant, either directly or indirectly, has hired and fired Plaintiff and other employees, controlled Plaintiff's work schedule and employment conditions, determined his payment rate and kept at least some records regarding his employment.

25. That at all times hereinafter mentioned, Defendant Vega was and is a supervisor at Defendant Expansion.

26. That upon information and belief, Defendant Vega was and is a resident of the State of New York.

27. That at all times herein relevant, Plaintiff Martinovic was in a position subordinate to Defendants Ryan, Joseph, and Vega with regard to his employment at Defendant Expansion.

28. That at all times herein relevant, Defendants Ryan, Joseph, and Vega had authority to control the terms and conditions of Plaintiff's employment at Defendant Expansion.

## FACTS

29. In June 1990, Plaintiff commenced employment at Defendant Expansion as a porter, and subsequently in the role of handyman in 2006 working at Defendants building located at 83-43 118th Street and 83-57 118th Street, Kew Gardens, New York.

30. As the handyman for the building, Plaintiff duties consisted of cleaning and making minor repairs in the building owned by Defendants.

31. Plaintiff was an exemplar employee; he was employed at Expansion for over 30 years.

32. In 2019, Defendant Vega was hired as a supervisor at Expansion.

33. Since the hiring of Vega, Plaintiff was supervised by Vega and reported directly to her.

34. Shortly thereafter, in 2019, coinciding with the hiring of Defendant Vega, Plaintiff became the target of discrimination based on his national origin and religion, as well as for exercising his rights for medical leave.

35. Upon information and belief, Plaintiff was the only Muslim employee providing janitorial services at Expansion where a majority of the employees are Hispanic.

36. Indeed, upon the hiring of Defendant Vega, Defendant Vega preferred and hired Hispanic employees to replace Plaintiff and other non-Hispanic employees.

37. That at all times herein relevant, the majority of handymen employed by Defendant were Hispanic, as well as Defendant Vega.

38. That at all times herein relevant, Vega would treat similarly situated Hispanic employees and non-Muslim employees better than Plaintiff, including hiring of Hispanic employees, upon her commencement of employment with Expansion.

39. That at all times herein relevant, Hispanic employees were favored and protected over similarly situated non-Hispanic employees.

40. Defendants treated Plaintiff differently because of his national origin and religion.

41. Defendant Vega engaged in a pattern of intentional discrimination against Plaintiff, strategically assigning Plaintiff to heavy duty work and the dirtiest, most difficult, and most dangerous of tasks.

42. Indeed, since the hiring of Vega, Plaintiff was required to perform tasks which included cleaning mold and garbage in the basement without having proper safety equipment, necessitating Plaintiff to wear a garbage bag over his body.

43. Plaintiff was also singled out by Vega and assigned tasks that were unrelated to the duties of a handyman, such tasks that were not within Plaintiff's ability to complete or assigned to Plaintiff prior to Vega's hiring and Plaintiff's complaints.

44. These tasks were orchestrated so that Defendants could subsequently reprimand Plaintiff for not completing these tasks under pretextual grounds to terminate Plaintiff's employment of over three decades.

45. Plaintiff complained of the different and negative treatment he was receiving from his supervisor as compared to those employees that were Hispanic and who did not exercise medical leave.

46. In fact, as Plaintiff complained, he began to experience further discrimination and retaliation.

47. The discrimination that Plaintiff already suffered during his employment due to his race and religion became even worse after Plaintiff sought to protect his rights under the Family Medical Leave Act ("FMLA").

48. Plaintiff's spouse suffers from a serious health condition, which he made known to Defendants in 2019.

49. At times, Plaintiff's spouse's condition required that Plaintiff be available to provide her with round-the-clock care.

50. Whenever Plaintiff required a day off to care for his spouse, he informed the Defendants that he needed the time off to care for his spouse.

51. Defendants were well aware that Plaintiff was the caregiver for his spouse and that the time he requested off was solely to care for his spouse.

52. Although Defendants knew that Plaintiff was taking time off to care for his ill spouse, Defendants never informed Plaintiff of the Federal or New York State family leave policies.

53. Accordingly, Plaintiff used his vacation days for the purpose of taking days off work to care for his ill spouse.

54. The personal time off available to Plaintiff was not sufficient to care adequately for his spouse, who needed constant care for weeks at a time.

55. Plaintiff became aware of the federal and New York personal leave policies through his own research and first requested to utilize family leave for twelve weeks, beginning on or about May 15, 2020.

56. Plaintiff submitted the required FMLA and New York Paid Family Leave (PFL) documents to his supervisors, including Defendant Vega, as soon as possible.

57. Plaintiff's requested time off was necessary to support and take care of his spouse.

58. Upon his return from leave, the negative treatment from his supervisor, Defendant Vega, escalated and became even more retaliatory.

59. Defendant Vega began to provide Plaintiff even more assignments and tasks that were well out of the required duties of a handyman, which required specific skills and training and were never previously a requirement of his position in the prior decades.

60. By way of just one example, after his leave, Plaintiff was assigned to install kitchen tiles in a vacant unit, a task which requires specific training in tile installation.

61. None of the other handymen employed by Defendants were required to install kitchen tiles.

62. Defendant Vega knew that Plaintiff was not qualified to install tiles and had never been required to do so in the past; the assignment was merely provided so that Plaintiff would fail.

63. Accordingly, when the kitchen tiles were not installed, Plaintiff was reprimanded immediately by Defendant Vega, presumably, as she planned to do when assigning him the task.

64. In addition, Plaintiff was required to do other work he was previously not required to do, including but not limited to, cleaning the debris in the building, which required Plaintiff to wear a black garbage bag over his body for protection.

65. The other employees, those that were Hispanic, non-Muslim, and those that did not request and take medical leave to care for their spouse, were never assigned to do these tasks.

66. While Plaintiff was suffering the discrimination and retaliation at his employment, his spouse's medical condition deteriorated.

67. As a result, Plaintiff required additional leave to care for his spouse in 2021.

68. Although Plaintiff was hesitant to request additional time off after being subjected to such discrimination and retaliation by his supervisor the first time, he requested leave under FMLA and New York Paid Family Leave policies, it was necessary for the health and well-being of his spouse.

69. As such, Plaintiff, once again, submitted the necessary FMLA and NY PFL forms to his supervisors, for twelve weeks between May 17, 2021 and August 17, 2021.

70. Shortly before his scheduled leave, Defendant Vega continued the pattern of strategic discrimination and retaliation as Plaintiff was once again tasked by Defendant Vega to replace kitchen tiles in an apartment.

71. Just as before, Plaintiff was reprimanded immediately when he was unable to complete the task.

72. Plaintiff was a handyman for the building for decades before Defendant Vega was hired.

73. Installing tiles was never included in the job description and duties of the handyman. Despite Defendant Vega's conduct, Plaintiff continued to work diligently and tend to the tasks assigned to him by Defendants.

74. Plaintiff was only required to do such tasks by Defendant Vega as a way for her to discriminate against him for his race and religion, as well as retaliate against him for his requested family leave.

75. After Plaintiff returned from his family leave, he continued to receive disparate and retaliatory treatment from his supervisors.

76. Plaintiff repeatedly complained of the discrimination and negative treatment to which he was subjected.

77. On December 17, 2021, Plaintiff was asked to bring in four vanities for an apartment unit in the building. While Plaintiff, agreed, he was also completing another task in the building at the same time, and asked for help.

78. Ten days later, on December 27, 2021, Plaintiff was terminated by Defendant Vega under pretextual grounds for insubordination in failing to bring in the four vanities ten days earlier.

79. While Plaintiff has conscientiously worked for Defendants for over 30 years, Defendants engaged in a pattern of discrimination and retaliation against Plaintiff, ultimately leading to the termination of his employment by his employer on December 27, 2021.

Wage and Hour Claims

80. Plaintiff was employed by Defendants as a handyman.

81. Defendants Ryan, Joseph, and Vega are regularly at the Defendants' business location and instruct employees what to do, have the authority to hire and terminate employees, change their pay and pay schedules, and maintain records regarding employee hours worked and compensation.

82. Plaintiff's duties included minor repairs and cleaning of the building properties.

83. Plaintiff's work duties required neither discretion nor independent judgment.

84. At all relevant times, Plaintiff provided non-exempt services at Expansion.

85. Plaintiff was paid an hourly rate at Expansion.

86. Plaintiff occasionally worked over 40 hours in a work week, during the statutory period under the NYLL.

87. Despite the fact that Plaintiff worked over forty (40) hours during certain periods, Defendants did not pay him overtime premiums of one and one-half (1.5) his hourly rate.

88. Upon information and belief, Defendants intentionally failed to maintain accurate time records of Plaintiff's time and pay under the statutory period of the NYLL.

89. By way of just one example, on March 1, 2019, Plaintiff's paystub showed that he worked 48 hours in the week, but was only paid at his normal rate of $23.18 for all 48 hours.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of Rights Under FMLA)

90. Plaintiff repeats and realleges each and every allegation contained in the above stated paragraphs and incorporates the same herein as fully set forth.

91. Defendants interfered and retaliated with Plaintiff's rights under the Family Medical Leave Act.

92. Defendants refused to advise Plaintiff of his rights under the FMLA.

93. Defendants failed to post the required notices and information regarding FMLA in their workplace locations.

94. Plaintiff gave information sufficient to place the Defendants on notice that his absence from work was due to a FMLA-qualifying condition.

95. Defendants subjected Plaintiff to undue scrutiny and retaliation for exercising his rights pursuant to the FMLA.

96. Defendants sanctioned and retaliated against Plaintiff for taking time off to care for his spouse's serious health condition, when in fact the leave qualified under the FMLA.

97. The Defendant' violations of the FMLA and the regulations which implement it constitute "interfering with" restraining and denying the exercise of Plaintiff's rights provided by the FMLA.

98. "Interfering with" includes manipulation by a covered employee such as the Plaintiff to avoid responsibilities under the FMLA.

99. That these acts are a willful violation of the FMLA, in that Defendants have knowingly denied, restrained and interfered with Plaintiff's exercise of or attempt to exercise any and all of his rights under the FMLA.

100. That these acts are a willful violation of the FMLA, in that Defendants have retaliated against Plaintiff for Plaintiff's exercise of or attempted exercise of rights under the FMLA, and entitles Plaintiff to recover damages as per 29 U.S.C. § 2617.

101. As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against Plaintiff, Plaintiff has suffered and will continue to suffer pain, extreme and severe mental anguish, emotional anguish, and emotional distress; Plaintiff has incurred and/or will incur medical expenses for treatment by health care professionals, and for other incidental expenses; Plaintiff has suffered and will continue to suffer a loss of earnings, loss of job opportunities, and other employment benefits such that Plaintiff is entitled to general and compensatory damages in amounts to be proven at trial.

102. That as a direct result of the foregoing, the Plaintiff is entitled to recover damages as provided by the FMLA and 29 U.S.C. §2617.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Discrimination in Violation of New York State Human Rights Law)**

103. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

104. New York State Executive Law § 296 provides that it shall be unlawful "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

105. Defendants engaged in an unlawful discriminatory practice in violation of the New York Executive Law by terminating the Plaintiff, creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of his national origin and religion.

106. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of lower Courts.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Retaliation in Violation of New York State Human Rights Law)**

107. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

108. New York State Executive Law § 296(7) provides that is shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section

applies to retaliate or discriminate against any person because he has opposed practices forbidden under this article."

109. Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

110. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for complaining about Defendants' violation of the New York State Executive Law.

111. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Discrimination in Violation of New York City Human Rights Law)

112. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein

113. The Administrative Code of the City of New York § 8-107 provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or immigration or citizenship status of any person, . . .(2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."

114. Defendants are employers within the scope of the NYCHRL.

115. Plaintiff is a "caregiver" within the scope of the NYCHRL.

116. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(a) by terminating the Plaintiff, creating and maintaining discriminatory working conditions and discriminating against the Plaintiff because of his race, creed, national origin, and/or caregiver status.

117. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Retaliation in Violation of New York City Human Rights Law)

118. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

119. The New York City Administrative Code Title 8, § 8-107(1) (e) provides that it shall be an unlawful retaliatory practice: "For an employer… to discharge… or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

120. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, § 8-107(1)(e) by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

121. Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for complaining of the discrimination faced in violation of the New York City Administrative Code.

122. That as a direct result of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW

123. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

124. Defendants willfully violated Plaintiff's rights by failing to pay overtime at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours each week, in violation of the NYLL and the regulations promulgated thereunder.

125. Defendants' failure to pay overtime caused Plaintiff to suffer loss of wages and interest thereon. Therefore, Plaintiff is entitled to recover from Defendants their overtime wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§663(1) *et seq*.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE

126. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

127. Defendants have willfully failed to supply Plaintiff notice as required by Article 6, § 195 containing Plaintiff's rate of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other: hourly rate or rates of pay and overtime rate of pay; regular pay day designated by the employer in accordance with NYL, Article 6, §191; the name of the employer, or any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of

business, and a mailing address if different; the telephone number of the employer plus such other information as the commissioner deems material and necessary.

128. Due to the Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided under NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## INJURY AND DAMAGES

129. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendants for the following relief:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by FMLA and awarding Plaintiff a recovery for damages sustained;

B. Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York State Executive Law and awarding Plaintiff a recovery for damages sustained;

C. Declaring that the Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code Title 8, § 8-107 et seq., and awarding Plaintiff a recovery for damages sustained;

D. Declaring that the Defendants harassed, discriminated against, retaliated against and terminated the Plaintiff on the basis of his status and awarding Plaintiff a recovery for damages sustained;

E. Awarding damages to the Plaintiff, retroactive to the date of his termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices;

F. A declaratory judgment that practices complained of herein are unlawful under the NYLL;

G. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

H. An award of compensatory damages as a result of Defendants' failure to pay Plaintiff wages entitled to under the NYLL;

I. An award of liquidated damages for non-payment wages under the NYLL and supporting regulations;

J. An award of fifty ($50) dollars per Plaintiff for each day that the violations of NYLL, Article 6, § 195(1) pertaining to distribution of wage notice, occurred or continued to occur, or a total of five thousand dollars ($5,000) as provided for by NYLL Article 6, §198(1-b);

K. An award of pre-judgment and post-judgment interest;

L. Awarding Plaintiff compensatory damages for his mental and emotional injuries;

M. Awarding Plaintiff punitive damages;

N. Awarding Plaintiff attorney's fees, costs and expenses; and

O. Awarding Plaintiff such other relief as this Court may deem just and proper;

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: January 11, 2023
      New York, New York

**EMRE POLAT, PLLC**
EMPLOYMENT ATTORNEYS

/s/ *Emre Polat*
_____
Emre Polat, Esq. (EP6063)
 45 Broadway, Suite 1420
New York, New York 10006
(212) 480-4500
emre@emrelaw.com
*Attorneys for Plaintiff*